<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CALVIN GAINES,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 11-4433 (WJM)** |
| **ROB FUSARI and ROB FUSARI PRODUCTIONS, LLC,** | |
| **Defendants.** | **OPINION** |

<u>FALK</u>, U.S.M.J.

    This case involves a dispute over the ownership of copyrights covering certain musical compositions and recordings commercially released by Stefani Germanotta, who is the artist popularly known as Lady Gaga.  Before the Court is the motion of Defendants, Rob Fusari and Rob Fusari Productions LLC, seeking leave to amend their answer to bring a third-party complaint for indemnification and contribution against Ms. Germanotta pursuant to Federal Rules of Civil Procedure 14 and 15.  [CM/ECF No. 37.]  Plaintiff, Calvin Gaines, has opposed the motion and has filed a cross-motion to strike Defendants' fourth affirmative defense, which claims that Ms. Germanotta is a necessary party.  [CM/ECF No. 40.]  One of the questions presented is whether the disputed ownership of the

copyrights should be determined in the absence of co-owner Lady Gaga. The motions are decided without argument. Fed. R. Civ. P. 78(b). For the reasons that follow, Defendants' motion is **GRANTED**, and Plaintiff's cross-motion is **DENIED WITHOUT PREJUDICE**.

<u>BACKGROUND</u>

A.   <u>Factual</u>

Plaintiff, Calvin Gaines, and Defendant, Rob Fusari, are both engaged in the business of writing musical compositions and producing sound recordings. (Compl., ¶¶ 8-9.) This suit involves the respective efforts and contributions of Gaines and Fusari to four songs commonly attributed to Lady Gaga entitled "Paparazzi"; "Beautiful, Dirty, Rich"; "Disco Heaven"; and "Retro Dance" (collectively, the "Compositions"). (Compl., ¶¶ 16-19.) The Compositions were commercially released by Interscope Records on Lady Gaga's album "The Fame" (the "Album") on August 19, 2008.[1] (Compl., ¶ 27.) At present, the Compositions and the Master Sound Recordings embodying Ms. Germanotta's performance of the Compositions (the "Masters") are co-owned by Fusari and Ms. Germanotta.

---

[1] The Album was a gigantic commercial success, having been certified three times platinum and having sold over 3 million copies in the United States alone. (Compl., ¶ 33.) The Album has also been certified gold, platinum or multi-platinum in 25 other countries. (Id.) The Album was nominated for 6 Grammy Awards at the 52nd Grammy Awards, including Album of the Year, and won for Best Electronic Dance Album. (Id.)

Gaines contends that he, too, should be considered a co-author of the Compositions and a co-producer of the Masters, and thus, a co-owner of the copyrights. [2]

The Gaines-Fusari history is somewhat complex. They agree that they have a shared history of writing music and producing sound recordings for various musical artists, including Brandy, Destiny's Child, Gloria Gaynor, and Whitney Houston. (Compl., ¶ 8-11; Defs.' Answer ¶¶ 8-11.) They also appear to agree that their efforts on past projects frequently involved the joint creation of musical "beds," consisting of instrumental music, over which later written songs, comprised of melody and lyrics, would be superimposed. Often, the creation of the "beds" preceded the creation of the songs, and the parties agree that with respect to many of their past collaborations, there would in fact be no songs absent the pre-existing beds. As a result, Gaines and Fusari have been credited as co-authors and co-producers on numerous works for musical artists on commercially released albums. However, they part company on what was intended and what

---

[2]     The Complaint is somewhat unclear with respect to Gaines's ownership claim as to the "Retro Dance" Composition. At one point, Gaines refers to the four compositions collectively as the "Compositions," see Compl., ¶ 19, and his causes of action and *ad damnum* clause seek a declaration of ownership related to all four "Compositions." (See Compl., ¶ 48; see also Compl., at p. 9.) However, Gaines states elsewhere in his Complaint that he has in fact already been credited as a co-author/owner of the Retro Dance composition. (See Compl., ¶ 20.) Thus, it is unclear whether Gaines has mistakenly included the Retro Dance composition in his request for relief, or perhaps whether he challenges the percentage of ownership that has been allocated to him with respect to this particular song.

occurred during the Lady Gaga project culminating in release of her album The Fame.

Fusari's position is that, back in 2006, he embarked on a project to create and produce sound recordings with Ms. Germanotta and then attempt to secure her a record contract.  (Defs.' Countercl. ¶ 8.)  As part of this project, Fusari contends he hired Gaines as a musician.  (Defs.' Countercl. ¶ 5.)  He alleges that when Gaines was hired, he was explicitly informed that the project was being developed in a different way than those on which Fusari and Gaines had previously collaborated.  (Defs.' Countercl. ¶¶ 8-9.)  Fusari's project with Ms. Germanotta was supposedly different because Ms. Germanotta wrote songs directly at the piano—sometimes with and sometimes without Fusari—and only *after* the songs had been written would musical "beds" be created and placed under the pre-written songs.  (Id.)  In other words, the opposite of Gaines and Fusari's past ventures.

Fusari takes the position that it was made clear to Gaines that, as a result of the unique nature of the Lady Gaga project, co-authorship credit and compensation would not be available.  (Defs.' Countercl. ¶¶ 8-9.)  He contends that Gaines understood and agreed, especially because there was no certainty that Fusari would succeed in securing a recording contract for Ms. Germanotta, or that even if he did, any songs would ever be included on any commercially released album.  However, according to Fusari, Gaines claimed that he could not work on the project for just

4

his regular compensation as a "session musician" through the musicians' union because it was financially insufficient.  As a result, Fusari claims that he agreed to supplement Gaines's union compensation by paying him $11,000 extra for his services.  (Defs.' Countercl. ¶ 11.)

Gaines has a different view.  Although the precise reasons are not fully set forth in the barebones Complaint, Gaines refers to the history of the two artists and contends he and Fusari jointly authored and produced aspects of the Lady Gaga compositions and recordings, and that Fusari has failed to properly credit him as a co-owner of the copyrights.  He contends that this failure has cost him millions of dollars and co-ownership of the disputed copyrights.

## B.   <u>Procedural</u>

On July 29, 2011, Gaines filed the present action seeking a declaratory judgment under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*., that he is, along with Fusari and Ms. Germanotta:  (1) a co-author of the Compositions; and (2) a co-producer of the Masters.  Gaines also seeks an accounting of all monies received by the Defendants from their use of the Compositions and Masters.

## <u>The Gaines-Gaga Settlement Agreement</u>

Of note, Gaines filed this action naming Fusari and his production company as the sole defendants.  This was done despite Gaines having alleged that Fusari has assigned his interests in the Compositions to SONY/ATV and his interests in

the Masters to Interscope Records.  More importantly, Gaines purposefully did not name Ms. Germanotta as a Defendant, *despite her undisputed co-ownership in the very copyrights in dispute*.  Rather than name Ms. Germanotta as a defendant, Gaines entered into a detailed agreement dated May 19, 2011, with Ms. Germanotta, SONY/ATV, Interscope Records, and a host of other corporate entities, through which Ms. Germanotta and the entities agreed, *inter alia*, to "acknowledge and be bound by a resolution of this proceeding (whether by settlement between the parties or a final, non-appealable adjudication on the merits by the Court) relating to Plaintiff's claim to be a co-producer of the subject master recordings and a co-author of the subject musical compositions identified herein." (See Compl., ¶ 26; see also Declaration of Brian D. Caplan, Esq., Ex. 4; CM/ECF No. 39.) [3]

The complexity of the Gaines-Gaga Agreement is emblematic of the stakes here.  Obviously prepared by a team of lawyers, it consists of an 8 page single spaced document that is challenging to understand.  Full of legalese, its implications are not explained, and there are references to numerous documents that are not attached.  There is, for example, a full discussion of Federal Rule of Civil Procedure 19, relating to indispensible parties.  Also, there are paragraphs

---

[3] This "agreement" is actually qualified and entirely unilateral in that Ms. Germanotta only signed the agreement with the understanding that she would agree provided that "her interest in the recordings would not be affected."  (Id.)

addressing the inevitable discovery demands on Ms. Germanotta and the other signatories.  Presumably, the Gaines-Gaga agreement purports to be a pre-suit settlement of some sort of between the signatories.  As it effects this motion, the Gaines-Gaga Agreement would appear to be evidence (if not a tacit concession) that Ms. Germanotta is a likely (and possibly) indispensible party to this case.

On October 24, 2011, Fusari filed an answer and counterclaims against Gaines for fraud, breach of contract, and unjust enrichment.  An amended answer was filed on consent on December 21, 2011.  On January 26, 2012, Defendants retained new counsel, with James DeZao, Esq. appearing in place of prior counsel, Peter Skolnik, Esq.  In his answer and counterclaim, Fusari contends that Gaines was hired only as a musician on the Lady Gaga project and that he was paid more than $11,000 for his work (over and above his union compensation) with the express understanding that co-author and co-producer credits would not be available.  Included in Fusari's amended answer is an affirmative defense stating that Gaines's Complaint must be dismissed for failure to join a necessary party— *viz.*, Ms. Germanotta.

## The Instant Motion

On May 1, 2012, Fusari filed the present motion to amend his answer to include a third-party complaint against Ms. Germanotta, pursuant to Federal Rule

of Civil Procedure 14.  On May 21, 2012, Gaines opposed the motion and filed a cross-motion to strike Fusari's joinder-based affirmative defense.

These motions effectively bring to a head an issue that has been discussed since the time this case was filed:  Whether an important co-owner of the copyrights—Ms. Germanotta (Lady Gaga)—should be joined in this suit?   In conferences before the Court as well as his brief, Gaines takes the position that Ms. Germanotta's participation in this case is unnecessary because he is only seeking a "percentage" of whatever percentage Fusari has of the copyrights.  In other words, if total ownership of the copyright is 100%, and (for the sake of argument) Fusari has 50% and Germanotta has 50%,[4] Gaines is only seeking a portion of Fusari's 50%.[5]  (See, e.g., Defs.' Br. 5, 11, 12 & n.2.)

Through the motion to amend, Fusari responds to this contention.  In seeking leave to file a third-party complaint to include Ms. Germanotta, it is Fusari's position that all the co-owners of the copyrights should be joined in this suit, at

---

[4]   No papers have been submitted that state what percentages of the copyrights are owned by Fusari and what percentages are owned by Lady Gaga. The Court has selected 50% for each owner for illustrative purposes only.  At the same time, fifty percent per-owner has also been selected because that is the percentage the parties have informally suggested may be the actual allocation.

[5]   Although this is the position that has been discussed at court conferences and is contained in Plaintiff's briefs on the motions, Gaines's actual Complaint is *not* limited in such a way.  Rather, the Complaint seeks a declaration of co-ownership without stating any limitation.

least in some capacity.  Fusari's position is that to the extent Gaines seeks a declaration of ownership, that declaration would likely affect Ms. Germanotta's interest in the copyrights.  And, more importantly, in the event Gaines is successful in securing a declaration of ownership, Fusari believes that any dividing of ownership percentages should be determined by including Ms. Germanotta's share. In other words, Fusari claims that if Gaines is successful in this case, Gaines percentage of ownership must be determined by reference to the 100% whole, not just the presumed 50% Fusari owns.

More specifically, Fusari seeks contribution and indemnification from Ms. Germanotta—i.e., if Fusari's share is reduced, then Ms. Germanotta's share should be reduced or she should reimburse Fusari to the extent his share is reduced.  He supports this theory by detailing certain interactions between Ms. Germanotta and Gaines that would suggest they had a private, close working relationship on the project.  For example, Fusari refers to "a few dozen times [where] Germanotta sat with [Gaines] directing his bass parts to accommodate what she was envisioning for the musical parts.  The sessions would last for hours."  (Proposed Third-Party Compl., ¶ 11.)  He also alleges that "many nights were spent in the lounge with Fusari, [Gaines], and Germanotta 'talking shop' in terms of her career."  (Id., ¶ 12.) Thus, Fusari claims that he should be granted leave to assert indemnification and

contribution claims against Germanotta so that she would be required, as a co-owner, to account for any potential award in this case.

Gaines has opposed the motion, claiming generally that it is prejudicial and futile because the claims are inadequately pleaded and unsupported.  He also claims that Ms. Germanotta is not a necessary party because of the pre-suit agreement.

## DISCUSSION

### A.  Legal Standard For Amendment

Motions to amend pleadings are governed by Rule 15(a).  Motions to file third-party complaints pursuant to Rule 14 are considered motions to amend the pleadings and are governed by the same traditional Rule 15 standards.  See Ryan v. Collucio, 183 F.R.D. 420, 423 (D.N.J. 1998).  Where, as here, a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent of the court's leave." Fed. R. Civ. P 15(a)(2).  The Court is to freely grant leave "when justice so requires."  (Id.)  The decision to grant a motion to amend a pleading rests in the sound discretion of the district court. Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330 (1970). Generally, leave to amend should be granted unless there is: (1) undue delay or prejudice;  (2) bad faith;  (3) dilatory motive;  (4) repeated failure to cure

10

deficiencies through previous amendments; or (5) futility.   Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir.2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'").  For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  Given the liberal standard for the amendment of pleadings, "courts place a heavy burden on opponents who wish to declare a proposed amendment futile." See Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F. Supp. 2d 761, 764 (D.N.J. 2000) (citations omitted).  Thus, "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990) (emphases added); see also 6 Wright, Miller & Kane Federal Practice and Procedure, §1487 (2d ed. 1990).

## B. Copyright Law Relating to Joint Authorship

When creators work together to combine contributions into a single work,

e.g., a song, they have created a joint work.  See Shapiro, Bernstein & Co. v. Jerry Vogel Music Co., 161 F.2d 406, 409 (2d Cir. 1946) ("The words and music of a song constitute a 'musical composition' in which the two contributors merge into a single work to be performed as a unit for the pleasure of the hearers . . . ."). Absent a contrary agreement, the authors of a joint work are equal co-owners of the copyright in the work.  See 17 U.S.C. § 201(a); 1 Nimmer on Copyrights § 6.08 ("In the absence of agreement to the contrary, all joint authors share equally in the ownership of the joint work.  This is true, even where it is clear that their respective contributions to the joint work are not equal.").

Whether a person is a co-author of a song is an issue of fact.  See 1 Nimmer on Copyrights § 6.07 ("An issue of fact arises in addressing whether a person has made sufficient contributions to a work so as to claim to be its joint author.").  As explained by the Ninth Circuit, "[t]he best objective manifestation of a shared intent, of course, is a contract saying that the parties intend to be or not to be co-authors.  In the absence of a contract, the inquiry must of necessity focus on the facts.  The factors articulated in this decision and in [the decisions of other Circuits] cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much.  Different people do creative work together in different ways, and even among the same people working together the relationship

12

may change over time as the work proceeds." <u>Aalmuhammed v. Lee</u>, 202 F.3d 1227, 1235 (9th Cir. 1999).

## C.  <u>Decision</u>

People rarely go astray when they rely on common sense.  Putting aside momentarily the formalities and complexities of the motions and the expressed and unexpressed strategies of the parties, the question posed by this early motion to amend is whether there is some reason the disputed authorship and copyrights of joint works Lady Gaga made famous should be determined in this declaratory judgment case without her (and any other authors or assignees of the copyrights). The common sense answer is no.  Fusari seeks to name her as a party, and Ms. Germanotta should be a party (despite her understandable desire not to be).  The law supports this common sense conclusion in every way (at least to the extent it can be gleaned from the papers submitted to the Court).

First, it seems likely that Ms. Germanotta may be an indispensible party. While it is possible that Ms. Germanotta is somehow not technically indispensible to determining authorship, that is a very complicated and close issue that is not squarely before the Court.  Third-Party Plaintiff Fusari has not moved to dismiss the case for failure to join Ms. Germanotta.  He has moved to file a third-party complaint against her, which will be addressed below.  Suffice it to say, there is authority suggesting that Ms. Germanotta would indeed be an indispensible party

here.  See, e.g., IDFA, LLC v. Wilson, No. 07-11622, 2009 WL 4646283, at *18 n.4 (E.D. Mich. Dec. 8, 2009); Stafford Trading, Inc. v. Lovely, No. 05-4868, 2007 WL 1512417, at *12-13 (N.D. Ill. May 21, 2007).

More to the point, the sole serious objection to Fusari's motion is futility— i.e., that the claims fail to state a claim.  There is no basis for this objection. Futility carries an extraordinarily heavy burden for the opponent to establish on a motion to amend.  Since the issue of ownership is so fact intensive, Fusari's claims—that to the extent that Plaintiff is declared a co-owner, Ms. Germanotta's interest should be adjusted—appears reasonable and viable.  In fact, if there is no agreement, it would appear to result as a matter of law, since all joint authors share equally in the ownership of the work.  In addition to her undisputed and entangled factual connection, this is a powerful reason why Fusari's claims are not futile, and why Lady Gaga would seem to be an indispensible party.  Certainly, Fusari has pleaded specific facts, e.g., the personal collaborations between Ms. Germanotta and Gaines, to suggest a fact issue as between Plaintiff, Defendant, and Ms. Germanotta.

One of the obstacles to a more comprehensive analysis of these issues is the failure of the parties to provide some very basic facts, in what is necessarily a fact intensive analysis.  Both the Complaint and Third-Party Complaint are spare and conclusory.  Basic facts are missing.  For example, there is no explanation of what

14

copyrights are in issue, how they came about, whether there are written agreements governing same, what percentage ownership anyone has in the works – or any other basic facts.  In this complex area of law involving concentrated factual inquiry, there is no basis to deny Defendants' motion to amend or to grant Plaintiff's motion to strike at this early stage.

## CONCLUSION

Defendants' motion to amend is Granted.  Plaintiff's motion to strike the indispensible party defense is Denied without Prejudice.  Other than being listed in a pleading, indispensability is not the primary issue now.  Were it to be raised, it is more appropriate to consider it in the context of a fully briefed motion with the necessary factual predicate placed before the Court.  Indeed, Fusari's Third-Party Complaint likely obviates the necessity of deciding indispensability.

The Gaines-Gaga Agreement does nothing to prevent Lady Gaga's addition to the suit.  It is not binding on Fusari or the Court.  It is expressly limited in the extent that it binds Ms. Germanotta.  In that sense, the Agreement could inevitably lead to later additional duplicative litigation depending on the result in this case.  The Agreement is also somewhat confusing.  It also anticipates the claim that Lady Gaga is indispensible and weakly attempts to obviate it.  If anything, the Agreement demonstrates Ms. Germanotta's all consuming involvement in the case and the profound reasonableness of her being a party.

The bottom line is this is a simple motion to amend made in the early stages of the case.  Although all the pleadings are vague, there is no way the amendment is "clearly futile."  According to the pleadings, Gaines, Fusari, and Ms. Germanotta were all apparently contributors to the compositions.  It makes eminent sense from a legal, factual and practical standpoint to have their ownership interests determined in one proceeding, which should now proceed on the merits.

A separate Order will be entered.


**s/Mark Falk_____**
**MARK FALK**
**United States Magistrate Judge**



**Dated: July 24, 2012**