Law Offices of James C. DeZao, P.A.
322 Route 46 West, Suite 120
Parsippany, N.J. 07054
(973) 808-8900
(973) 808-8648 (f)
Attorneys for Defendants Rob Fusari
and Rob Fusari Productions, LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALVIN GAINES, | Civil Action No. 11-CV-4433 (WJM/MF) |
| Plaintiff-Counterclaim Defendant, | |
| -v- | PROPOSED SECOND AMENDED ANSWER AND COUNTERCLAIM |
| ROB FUSARI, ROB FUSARI PRODUCTIONS, LLC, and STEFANI GERMANOTTA aka LADY GAGA, | |
| Defendants-Counterclaim Plaintiffs. | |

Defendants Rob Fusari ("Fusari") and Rob Fusari Productions, LLC ("RFP")(collectively referred to as "Defendants"), by way of Proposed Amended Answer to the Complaint of CalvinGaines ("Gaines"), say:

**JURISDICTION AND VENUE**

1. The allegations set forth in paragraph 1 are legal conclusions for which no response is required. To the extent an answer is required, Defendants deny the allegations set forth in paragraph 1.

2. The allegations set forth in paragraph 2 are legal conclusions for which no response is required. However, Defendants note that there is no Section 1391(b)(1)(3) in 28 U.S.C., that Defendant RFP is a limited liability company rather than a corporation, and deny that venue lies under 28 U.S.C. Section

1

1391(d).

## PRELIMINARY STATEMENT

3. Defendants deny the allegations set forth in paragraph 3.

4. Defendants admit the allegations set forth in paragraph 4.

5. Defendants admit the allegations set forth in paragraph 5.

6. Defendants admit the allegations set forth in paragraph 6.

7. Defendants admit the allegations set forth in paragraph 7.

## BACKGROUND

8. Defendants admit that Gaines writes musical compositions. However, Defendants are without knowledge or information sufficient to form a belief as to whether Gaines has produced commercially-released sound recordings other than those sound recordings Gaines co-produced with Fusari.

9. Defendants admit the allegations set forth in paragraph 9.

10. Defendants admit that Gaines was a musician and co-writer on recordings Fusari produced for the recording artists Brandy, Destiny's Child, Gloria Gaynor, and Whitney Houston, because those recordings were created over musical "beds" that Gaines co-authored, but deny that Gaines was in fact a co-producer on those recordings although he was credited as such. Defendants deny that Gaines was either a co-writer or co-producer on any Lady Gaga recordings, none of which were created over musical "beds" co-authored by Gaines.

11. Defendants admit the allegations set forth in paragraph 11, because those recordings were created over musical "beds" that Gaines co-authored, but deny that Gaines was in fact a co-producer on those recordings although he was

credited as such.

12. Defendants admit the allegations set forth in paragraph 12, because those recordings were created over musical "beds" that Gaines co-authored, but deny that Gaines wasin fact a co-producer on "You're The Only One" although he was credited as such, and deny that Gaines was credited as a co-producer on "No, No, No."

13. Defendants admit the allegations set forth in paragraph 13, because that recording was created over a musical "bed" that Gaines co-authored, but deny that Gaines was in fact a co-producer on that recording although he was credited as such.

14. Defendants admit the allegations set forth in paragraph 14, because those recordings were created over musical "beds" that Gaines co-authored, but deny that Gaines was in fact a co-producer on those recordings although he was credited as such.

15. Defendants admit the allegations set forth in paragraph 15, because that recording was created over a musical "bed" that Gaines co-authored, but deny that Gaines was in fact a co-producer on that recording although he was credited as such.

16. Defendants deny that Gaines co-authored the music of "Paparazzi," "Beautiful, Dirty, Rich," or "Disco Heaven," state that Defendants lacked the intention necessary to create a joint work with Gaines, and state that Fusari co-authored the lyrics with Stefani Germanotta (p/k/a "Lady Gaga").

17. Defendants deny the allegation set forth in paragraph 17, and state that

3

Defendants lacked the intention necessary to create joint works with Gaines.

18. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 18.

19. Defendants deny the allegation set forth in paragraph 19, and state that Defendants lacked the intention necessary to create a joint work with Gaines.

20. Defendants deny that Gaines is a co-author of the Retro Dance Composition, deny that Gaines is a co-owner of the copyright therein, and are without knowledge or information sufficient to form a belief as to the truth of the other allegations set forth in paragraph 20.

21. Defendants admit the allegations set forth in paragraph 21.

22. Defendants admit the allegations set forth in paragraph 22.

23. Defendants deny the allegations set forth in paragraph 23, and state that the creation of the Masters was wholly inconsistent with the "history of musical collaboration" between Defendants and Gaines.

24. Defendants deny the allegations set forth in paragraph 24.

25. Defendants admit the allegations set forth in paragraph 25.

26. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 26.

27. Defendants admit the allegations set forth in paragraph 27.

28. Defendants admit the allegations set forth in paragraph 28.

29. Defendants admit the allegations set forth in paragraph 29.

30. Defendants admit the allegation set forth in paragraph 30.

31. Defendants admit that because Gaines is not a co-author and that

defendants lacked the intention necessary to create a joint work with Gaines, he has never received co-authorship monies in connection with "Paparazzi," "Beautiful, Dirty, Rich," or "Disco Heaven."

32. Defendants admit the allegations set forth in paragraph 32.

33. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 33.

34. Defendants admit the allegations set forth in paragraph 34.

35. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 35.

36. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 36.

37. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 37.

38. Defendants admit the allegations set forth in paragraph 38.

39. Defendants admit that because Gaines was not a co-producer of the Masters, he has never received compensation or acknowledgment for any producer services in connection with the Masters.

40. Defendants deny the allegations set forth in paragraph 40.

41. Defendants admit the allegations set forth in paragraph 41.

42. Defendants deny that any accountings were or are due to Gaines, and state that in addition to payments through the musicians' union believed to be in excess of $15,000, which Gaines received for his services as a musician on the Compositions, Fusari

5

paid Gaines in excess of $11,000 as mutually agreed additional compensation for Gaines's services as a musician on the Compositions.

43. Defendants admit the allegations set forth in paragraph 43.

## FIRST CLAIM

44. Defendants repeat and reallege each and every preceding response as if fully set forth herein.

45. Defendants admit the allegations set forth in paragraph 45.

46. Defendants admit the allegations set forth in paragraph 46, but contend that Gaines is not a legitimate co-author of the Retro Dance Composition and are without knowledge or information sufficient to form a belief as to whether he is credited as such.

47. The allegations set forth in paragraph 47 are legal conclusions for which no response is required.

48. Defendants deny the allegations set forth in paragraph 48.

49. Defendants deny the allegations set forth in paragraph 49.

## SECOND CLAIM

50. Defendants repeat and reallege each and every preceding response as if fully set forth herein.

51. Defendants admit the allegations set forth in paragraph 51.

52. Defendants admit the allegations set forth in paragraph 52.

53. The allegations set forth in paragraph 53 are legal conclusions for which no response is required.

54. Defendants deny the allegations set forth in paragraph 54.

6

55. Defendants deny the allegations set forth in paragraph 55.

## THIRD CLAIM

56. Defendants repeat and reallege each and every preceding response as if fully set forth herein.

57. Defendants admit that they have received monies from exploitation of the Compositions and the Masters, but deny that plaintiff is a co-author, a co-producer or a joint owner, and therefore deny that plaintiff is entitled to any accountings.

58. Defendants deny the allegations set forth in paragraph 58.

59. Defendants deny the allegations set forth in paragraph 59.

## FIRST DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands and other principles of equity.

## THIRD DEFENSE

Plaintiff's claims are barred by the statute of limitations set forth in 17 U.S.C, §507(b).

## FOURTH DEFENSE

Plaintiff's Complaint must be dismissed for failure to join necessary party Stefani Germanotta (p/k/a "Lady Gaga").

**WHEREFORE**, Defendants respectfully request judgment:

(a) Dismissing the Complaint with prejudice;

(b) Awarding Defendants' attorneys' fees and other costs of defense; and

(c) Granting such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

1. This Court possesses subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§1331, 1338, and 1367.

2. Defendant-Counterclaim Plaintiff, Rob Fusari ("Fusari"), is a musician, songwriter and sound recording producer, and a citizen and resident of the State of New Jersey.

3. Defendant-Counterclaim Plaintiff, Rob Fusari Productions ("Fusari Productions") is a New Jersey limited liability company and the successor in interest to White Chocolate Productions, Inc., a New Jersey s-corporation.

4. Plaintiff-Counterclaim Defendant, Calvin Gaines ("Gaines"), is a musician and a citizen and resident of the State of New Jersey. Gaines purports to be a songwriter and sound recording producer.

5. Before Fusari hired Gaines solely as a musician in connection with Fusari's work with Stefani Germanotta (p/k/a "Lady Gaga") to write and produce sound recordings, Fusari and Gaines had previously collaborated to create sound recordings for various other recording artists.

6. On each of those pre-Gaga collaborations, Fusari and Gaines had created an instrumental musical "bed" before any *song*, comprised of melody and lyrics, was superimposed on that musical "bed." Accordingly, because of Gaines's contributions to those musical "beds" – without which no *song* would subsequently have been created – and because Fusari and Gaines had the intent to create joint works for the purposes of copyright, Gaines received credit and compensation as a co-author. On those pre-Gaga collaborations, Gaines' contributions as a co-author were solely in connection with the musical "beds" – and

8

not in connection with either melody or lyrics of the resulting songs.

7. Also on certain of those pre-Gaga collaborations, Gaines received credit and compensation as a co-producer, although he in fact performed none of the acts typically and necessarily performed by the producer of a sound recording. Fusari agreed to share co-producing credit and compensation with Gaines in part due to Fusari's early inexperience and naiveté, and in part because in 2003, Gaines sent an intermediary to threaten Fusari – a threat Fusari interpreted as a danger to his physical safety.

8. When Fusari hired Gaines as a musician in connection with Fusari's collaboration with Lady Gaga, and Fusari's intention to create and produce sound recordings with Lady Gaga and then to attempt to secure a recording contract for Lady Gaga, Fusari explicitly informed Gaines that the Lady Gaga project was being developed differently than those on which Fusari and Gaines had previously collaborated.

9. Fusari explained to Gaines that no instrumental musical "beds" were being created upon which songs would be superimposed. Lady Gaga, then still known only as Stefani Germanotta, wrote songs directly at a piano – sometimes with Fusari and sometimes without him. Only after each song had been written would a musical "bed" be placed and recorded under those pre-written songs. Fusari thereby made it clear to Gaines that he had no intention to create joint works with Gaines for the purposes of copyright.

10. Accordingly, Fusari explained to Gaines that co-authorship credit and compensation would not be available to Gaines on the Lady Gaga project, and that Fusari alone would produce all sound recordings. Gaines accepted these terms. However, he advised Fusari that he could not afford to work on the project for compensation limited to amounts Gaines would receive as a session musician through the musicians' union, especially

because there was no certainty that Fusari would succeed in obtaining a recording contract for Lady Gaga or that any sound recordings on which Gaines would play would ultimately be included on any commercially-released album. Because Fusari valued Gaines as a musician, he agreed to supplement Gaines's union compensation.

11. In compliance with his agreement with Gaines, Fusari supplemented Gaines's union compensation by paying Gaines in excess of $11,000 for Gaines's services as a musician on Lady Gaga sound recordings.

12. Gaines worked as a session musician on several songs, some of which were included on subsequent Lady Gaga album releases. He neither co-wrote nor co-produced any of those sound recordings or recording masters.

13. The invariable custom and practice in the recording industry is that a musician who is also a co-author does not receive payments as a musician through the musician's union. Therefore, by applying for and/or accepting such payments, a musician implicitly acknowledges that he or she is not a co-author. Gaines not only agreed to the contractual terms he negotiated with Fusari and accepted supplemental income from Fusari, but Gaines also received payments as a musician through the musicians' union on each of the songs for which he now claims co-authorship. On information and belief, Gaines has received in excess of $15,000 from the musicians' union in connection with those songs.

14. Because of Gaines's pre-existing agreement with Fusari that he would not receive co-authorship or co-producing credit or compensation on the songs subsequently created and recorded for the Lady Gaga project, Gaines knew at the time each of those songs was recorded that he was neither a co-author or co-producer, and would receive neither credit nor compensation as a co-author or co-producer. Therefore, to the extent, if any,

10

that Gaines ever had any claims under the Copyright Act, those claims accrued at the time each song was recorded. All of the songs for which Gaines now claims co-authorship and co-production credit and compensation were recorded prior to June 15, 2008, and therefore Gaines's claims are barred by the 3-year limitations period set forth in 17 U.S.C. §507(b).

## COUNT I
### (Fraud)

15. Gaines represented to Fusari that he understood and accepted the circumstances under which he would serve as a musician on the Lady Gaga project, and that if Fusari would supplement his payments from the musicians' union, he would accept those payments from Fusari and the union as full compensation for his services.

16. Gaines intended Fusari to rely on those representations, which Gaines knew to be false. Fusari did in fact rely on those representations, and paid Gaines in excess of $11,000 in reliance thereon.

17. Gaines knew at the time that he made those representations that if any songs on which he served as a musician were subsequently included on a commercially-released album, he had no intention of fulfilling his promise, but instead intended to claim co-authorship and/or co-production credit and compensation.

18. Gaines's intentionally false representations constituted fraud.

**WHEREFORE** Counterclaimants hereby demand that judgment be entered against Plaintiff, awarding compensatory and punitive damages, costs and attorneys' fees.

## COUNT II
### (Breach of Contract)

19. Counterclaimants repeat each and every allegation previously stated as if

set forth fully herein.

20. Gaines contracted orally with Fusari to perform services as a musician on the Lady Gaga project solely in exchange for Fusari's agreement to supplement the payments Gaines would receive through the musicians' union.

21. In fulfillment of the oral contract, Fusari paid Gaines in excess of $11,000. By seeking credit and compensation as a co-author and co-producer, Gaines has breached the oral contract.

22. By accepting payment as a musician through the musicians' union, Gaines created an implied contract with Fusari consistent with the industry custom and practice that a musician who intends to claim co-authorship status on a sound recording does not also accept payment as a musician. By now seeking such payment, Gaines has breached his implied contract with Fusari.

**WHEREFORE** Counterclaimants hereby demand that judgment be entered against Plaintiff, awarding compensatory damages, costs and attorneys' fees.

## COUNT III
### (Unjust Enrichment)

23. Counterclaimants repeat each and every allegation previously stated as if set forth fully herein.

24. Gaines received a benefit from Fusari in the form of supplemental musician's compensation Fusari agreed to pay Gaines in lieu of co-authorship and/or coproducer status and compensation.

25. Fusari reasonably expected to receive the benefit of Gaines's services as a musician in exchange for Fusari's supplementing of the payments Gaines would receive through the musicians' union.

12

26. To allow Gaines to retain the benefit of those payments would unjustly enrich Gaines.

**WHEREFORE** Counterclaimants hereby demand that judgment be entered against Plaintiff, awarding compensatory damages, costs and attorneys' fees.

### THIRD PARTY COMPLAINT

The Defendants-Counterclaim Plaintiffs ("the Defendants"), by and through their counsel, James C. DeZao, Esq., state for their Third-Party Complaint as follows:

1. This Court possesses subject matter jurisdiction over the Defendants' counterclaims pursuant to 28 U.S.C. §1367.

2. This Third-Party Complaint is authorized by F.R.C.P. 14(a).

3. Venue in this jurisdiction is proper pursuant to 28 U.S.C. §§1391(c) and 1400(a) in that a substantial part of the events or the omissions giving rise to Plaintiff's claims occurred in the District of New Jersey.

4. Lady Gaga is an individual with a residence in New York, New York.

5. The Defendants repeat and reallege the allegations made in Paragraphs 1-14 of their Counterclaim.

6. The songs the Plaintiff alleges he collaborated on were songs he was creating to the voice of Lady Gaga, or that she sang, wrote lyrics for, or otherwise co-authored.

7. Specifically, Germanotta and Fusari would create an initial melody and lyric for each composition in the Parsippany, New Jersey studio. Thereafter, either Fusari or Germanotta would record a piano part and drum groove that could be used as a template for Germanotta to record a vocal.

13

8. On other occasions, Germanotta would return to New York while Fusari spent the night working on the production so that she could come in the following day to record her vocal against the "more complicated" arrangement/track/musical bed.

9. On several occasions, Fusari invited the Plaintiff into the studio to replay bass/guitar parts that he had either already played (but wanted replayed) or for the Plaintiff to perform parts that Fusari had ideas for but wanted the Plaintiff to perform rather than Fusari.

10. Each time that the Plaintiff came to the studio, he was playing to an already recorded musical composition. On these occasions, the Plaintiff was playing to a vocal performance that Germanotta had already performed.

11. On other occasions, Germanotta would not leave the studio and instead stay for the Plaintiff's recording sessions. A few dozen times, Germanotta sat with the Plaintiff, directing his bass parts to accommodate what she was envisioning for the musical parts. These sessions would last several hours.

12. Additionally, many nights were spent in the lounge with Fusari, the Plaintiff, and Germanotta "talking shop" in terms of Germanotta's career.

13. The Plaintiff asked Fusari if he could call Germanotta, as he learned of the onset of the breakdown of Fusari's relationship with her. Fusari agreed. Upon information and belief, Germanotta and the Plaintiff spoke several times, as the Plaintiff urged Germanotta to stay with Fusari while negotiating with labels, but Germanotta denied the request.

14. Lady Gaga therefore had an ownership interest in the songs that are the subject of this action.

15. Lady Gaga upon information and belief, contracted to receive monies for the said songs.

16. Therefore, Lady Gaga is potentially liable for some or all of the Plaintiff's claims.

## Count I:
## Indemnification

17. The Defendants restate the allegations contained in Paragraphs 1-16.

18. The Defendants and Germanotta had a special legal relationship insofar as he was her producer and co-author and was out to – and did – advance her career.

19. To the extent that the Defendants are found liable to the Plaintiff, the Defendants are entitled to recover any payments made to the Plaintiff from Germanotta under common-law (equitable) indemnity.

20. The Defendants' liability in this matter is secondary, constructive, vicarious, technical and/or imputed insofar as Germanotta was responsible for conveyance of interest in the songs and ignored the Defendants' and Plaintiff's requests that she remain with Fusari.

21. Therefore, the Defendants are entitled to indemnification from Germanotta for all or part of the Plaintiff's claim.

## Count II:
## Contribution

22. The Defenants repeat and allege the statements contained in paragraphs 1-16.

23. As co-owner of the works in question who conveyed her interests therein for money, if the Defendants are held liable to the Plaintiff, Germanotta would be liable to the Defendants for contribution to said award.

24. Indeed, any liability the Defendants have in this matter is shared by Germanotta as a joint tortfeasor. Specifically, Germanotta committed a wrongful act, neglect, or default in her duties to the Plaintiff insofar as she contracted to obtain money from the subject songs, which she knew or should have known the Plaintiff had an interest in and whose interest she failed to protect.

25. Therefore, Germanotta is liable for contribution.

**WHEREFORE**, the Defendants respectfully request that the Complaint be dismissed with prejudice and granting other relief as it deems just and proper.

LAW OFFICES OF JAMES C. DEZAO, P.A.
Attorneys for Defendants Rob Fusari and Rob Fusari Productions, LLC

By:   /s/ James C. DeZao
      James C. DeZao, Esq.
      LAW OFFICES OF JAMES C. DEZAO, P.A.
      322 Route 46 West
      Suite 120
      Parsippany, New Jersey 07054
      (973) 808-8900

Dated:

### JURY DEMAND

Counterclaimants hereby demand a trial by jury as to all issues so triable.

LAW OFFICES OF JAMES C. DEZAO, P.A.
Attorneys for Defendants Rob Fusari and Rob Fusari Productions, LLC

By:   /s/ James C. DeZao
      James C. DeZao, Esq.
      LAW OFFICES OF JAMES C. DEZAO, P.A.
      322 Route 46 West
      Suite 120
      Parsippany, New Jersey 07054
      (973) 808-8900

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that, to the best of my knowledge, the subject matter of this proceeding is not the subject of any other pending court action, or of any pending arbitration or administrative proceeding. I am aware that if the foregoing is willfully false, I am subject to punishment.

By: /s/ James C. DeZao
James C. DeZao

Dated: